**Douglas W. THOMPSON, Appellee,**

v.

**Bill ARMONTROUT, Appellant.**

No. 86–2308.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1986.

Decided Dec. 23, 1986.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., for appellant.

Mark G. Flaherty, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, FAGG, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Douglas Thompson is currently serving a life sentence in the Missouri State Penitentiary. He has been tried for the same crime three times and has served nearly twenty years in prison. His request for parole was denied without a hearing. He had been previously paroled after serving fourteen years on his second conviction. Although Thompson was a productive member of society during his three years on parole, he was nonetheless denied parole after his third trial, which was held after he successfully used the appellate process to reverse his second conviction.

Armontrout, Warden of the Missouri State Penitentiary at Jefferson City, Missouri, appeals from the district court's order[1] releasing Thompson on parole from the Penitentiary. 647 F.Supp. 1093. We granted a stay of the district court's order pending this appeal, and we now vacate the stay and affirm the judgment of the district court.

## I. FACTS.

In 1961, Thompson was tried in Missouri state court for murder. He was convicted and sentenced to death. After an unsuccessful direct appeal, his conviction was reversed in 1963 pursuant to rule 27.26, Mo.Rev.Stat.[2] because the State had sup-

---

1. The Hon. Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.

2. This rule provides in pertinent part:
    A prisoner in custody under sentence and claiming a right to be released on the ground that such sentence was imposed in violation of the Constitution and laws of this state or the United States, * * * or is otherwise subject to collateral attack, may file a motion at any time in the court which imposed such

pressed material evidence. When his conviction was reversed, Thompson had spent two years in jail. In 1966, Thompson was retried in another Missouri state court, and was reconvicted and sentenced to life imprisonment, and, thereafter served fourteen more years in the Missouri State Penitentiary.

During this time, Thompson filed a number of claims for relief in state and federal court. The nature and disposition of these claims is set out in *Thompson v. White*, 661 F.2d 103, 104–105 (8th Cir.1981). Most pertinent to our discussion is that on September 10, 1975, Thompson filed for relief in the Missouri state court alleging, *inter alia*, that his jury had been unconstitutionally selected. On March 10, 1980, Thompson moved for removal of the jury selection issue to federal district court on the grounds that the State had deliberately delayed his case. The district court dismissed the claim.

On November 21, 1980, Thompson was paroled to a custody detainer lodged by the State of California,[3] to serve a prior California sentence for an unrelated crime. Although the California sentence was five years to life, Thompson filed a successful habeas corpus petition and was released from jail in California after four months, on March 24, 1981. After his release, Thompson remained under the supervision of the Missouri Parole Board.

Thompson also had appealed the Missouri district court's dismissal of his jury selection claim to this court, and on October 14, 1981, we reversed the dismissal and vacated his conviction.[4] In 1984, Thompson was retried in Missouri a third time and was again sentenced to life imprisonment. After being free for three years under the supervision of the Board and a productive

member of society, he returned to the Missouri State Penitentiary and is there now.

After returning to prison in 1984, Thompson requested release on parole from the Board. This request was denied without a hearing, and is the central issue in this appeal.

After the Board had spoken, Thompson sought, and received, release on habeas corpus in federal district court. This court, however, stayed his release from prison until the State's appeal could be heard.

## II. APPLICABLE LAW.

In granting Thompson habeas corpus relief, the district court relied on the following body of law.

*North Carolina v. Pearce*, 395 U.S. 711, 725–26, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969), established that "[d]ue process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." In *Pearce*, the defendant had been tried and sentenced to twelve to fifteen years imprisonment. He reversed his conviction and upon retrial was sentenced, by the same judge, to what amounted to a longer term. The Supreme Court held as follows:

> In order to assure the absence of [retaliatory motivation on the part of the sentencing judge], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.

"In sum, the Court applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1981).

sentence to vacate, set aside, or correct the same.

3. *See* Interstate Agreement on Detainers, 18 U.S.C. app. §§ 1–8 (1982).

4. Our opinion in *Thompson v. White*, 661 F.2d 103 (8th Cir.1981), was appealed by the State.

The Supreme Court granted certiorari, vacated the judgment, and remanded the case to us for further consideration in light of *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). We affirmed our prior decision on remand in *Thompson v. White*, 680 F.2d 1173 (8th Cir.1982), *cert. denied*, 459 U.S. 1177, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983).

The *Pearce* Court also held that "punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *Pearce* at 718–19, 89 S.Ct. at 2077.

The key element in *Pearce* is "vindictiveness" by the sentencing party in response to a prisoner's successful use of the appellate process. Thus, in cases where a second sentence has been greater than the first, but different judicial bodies imposed the two sentences, *Pearce* has not applied. In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), a different court imposed the second, harsher sentence, and the presumption of vindictiveness was not applied. Similarly, in *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), where a different jury imposed a harsher second sentence, the presumption was not applied.

## III. DISTRICT COURT OPINION.

Against this backdrop, the district court found that the Board, after releasing Thompson to California on parole in 1980, had vindictively denied him parole in 1984. The reasons for the Board's vindictiveness were: (1) The sentencing judge in Thompson's third trial strongly recommended to the Board that Thompson not be paroled, and (2) the Board wished to redeem itself in the public eye after Thompson's rapid California release, *i.e.*, the Board had "to do over what it thought it had already done correctly," and thus Thompson made the Board and the State of Missouri appear "weak and incompetent."

The district court recognized that although *Pearce* and its progeny referred to a *judge's* vindictiveness, "due process require[s] that the same standard apply to the action of the Parole Board under [these] facts. * * * If the judge had sentenced petitioner to life imprisonment without possibility of parole, such a sentence would be *a fortiori* more severe for due process purposes than the previous life sentences [with parole]."

## IV. DISCUSSION.

### A. Applicability of *Pearce*.

The State has argued in its brief that the *Pearce* doctrine is inapplicable to this case. The State also argued that the goal of *Pearce* was to stop vindictiveness in sentencing by the same trial judge who had been reversed by an appellate court, and here, the two life sentences were imposed by two different judges, negating the application of *Pearce*.

Because of the State's concession at oral argument, we need not decide in this case whether *Pearce* is narrowly limited to judges only, or whether it can apply to other sentencing entities as well. In this regard counsel for the State conceded at oral argument that the *Pearce* doctrine could be applicable, under the right factual circumstances, to the actions of the parole board. Counsel argued, however, that the facts in this case did not justify application of *Pearce*. After examining the district court's findings and the record, we think otherwise.

■ We thus conclude that, under the State's concession and the facts of this case, it was proper to apply the *Pearce* doctrine to the actions of the Board. In reaching this conclusion, however, we emphasize that the general applicability of the *Pearce* doctrine to parole boards is still an open issue in this Circuit. We stress, as did the district court, that this opinion is dictated by the unique facts of this case, and hold only that under the facts of *this* case, the rationale in *Pearce* applies to the actions of *this* parole board.

### B. Vindictiveness.

■ The State denies that the Board acted through improper and vindictive motives. We note that the district court's findings as to vindictiveness are findings of fact, which we can set aside only if "clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). We conclude that the district court's findings are not clearly erroneous.

The State points to the 1980 Board Order releasing Thompson to California as conclusive evidence that "it was a condition of petitioner's parole that he serve his California time." The Order stated:

It is further ordered that you be released on parole to a detainer in favor of California State Prison, San Quentin, California; said parole to be served concurrently with your California sentence. It is further ordered that in the event you are released from the California authorities before your expiration date on your sentence from the Missouri Department of Corrections, you will continue under the supervision of this Board, Box 267, Jefferson City, Missouri, and will notify them prior to your release.

The State denies that the Board felt a need to redeem itself in the eyes of the public after Thompson was released, and asserts that the Board was motivated solely by the lack of time Thompson served in California. In this regard, the State points to a memorandum the Board wrote to Thompson in 1985, when they denied him parole, which states in pertinent part:

When you were [sent to California on] your custody detainer, November 21, 1980, it was not the intent of the Board that you would be released from confinement. It was, in fact, the belief of the Board that because of your five-to-life sentence in the State of California that you would be incarcerated in that state for an extended period of time.

The State argues that the Board was therefore not extending Thompson's sentence, but was adjusting an unanticipated lenient sentence. In sum, the main thrust of the State's argument is that service of at least five years in California prison was the sole rationale, and the express reason, for Thompson's 1980 parole.

We are skeptical of this argument. As Thompson points out, following his release from California in 1981, he was free for nearly three years, under the supervision of the Board. During this time, the Board made no complaint to the California authorities regarding the early release, and made

no attempt to revoke his parole. Furthermore, as the district court pointed out, an early release by California was a potential factor that the Board should have taken into account in granting parole in 1980. Even if the Board did expect Thompson to serve a longer time in California, by releasing him to the California prisons, the Board took a gamble as to the rest of his term, and retained no reasonable expectation of control over the length of his sentence. The two documents relied on by the Board, as proof of their intent and expectation that Thompson be imprisoned in California for at least five years, are not very convincing.

The Order authorizing Thompson's release to California does not clearly state the Board's intention that he remain imprisoned for at least five years; if anything, it anticipates the possibility that he will be released sooner, by stating: "[I]n the event you are released from the California authorities before your expiration date on your sentence from the Missouri Department of Corrections, you will continue under the supervision of this Board * * *." Thus, the Order appeared to expressly contemplate what happened here.

We decline to accord substantial evidentiary weight to the Memorandum explaining the reasons for Thompson's denial of parole in 1985. As Thompson points out, it appears to be an "after the fact justification" for the denial of parole. It is contradicted by the intent we discern from the Order authorizing Thompson's release to California.

■ In sum, we think the critical facts are that, when Thompson was released to California, it was ordered that, if released from the California authorities, he would "continue under the supervision of this Board." He did so until he was successful in reversing the Missouri conviction, and then upon reconviction he did not continue under the supervision of the Board but, rather, was sentenced to the penitentiary and parole denied. It is on this basis that we find justification for concluding that

Judge Wright was not clearly erroneous in his finding of vindictiveness.

### C. Appropriate Remedy by District Court.

The State argues that in the event Thompson prevails, the district court nonetheless erred in granting Thompson release on parole, for by doing so, it impermissibly sat as a "super parole board," and ignored considerations of comity. The State argues that the proper remedy would have been to allow the State to correct the due process violation by having the Board hold a new hearing, but without exercising their allegedly vindictive motives.

We reject the State's contention because it failed to raise this matter in the district court. It is the oft-stated rule in this Circuit that we do not rule on issues not raised below. *Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

We thus hold that the district court correctly ordered Thompson's release on parole. Based on the foregoing, we affirm the judgment of the district court.

LET OUR MANDATE ISSUE FORTHWITH.